**STATE OF WEST VIRGINIA**

*In re* A.E.

**No. 19-0811** (Morgan County 18-JA-17)

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother V.E., by counsel J. Mark Sutton, appeals the Circuit Court of Morgan County's August 9, 2019, order terminating her parental rights to A.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Debbie Flowers Payne, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, Deputy Tony Link of the Morgan Country Sheriff's Department filed a child abuse and neglect petition against petitioner.[2] Deputy Link alleged that, in September of 2018, he pulled petitioner's vehicle over after receiving reports that she was attempting to drive "messed up" while the child was in the backseat. Deputy Link performed a field sobriety test on petitioner, which she failed. After being arrested for driving under the influence ("DUI") with a minor in the vehicle, petitioner admitted to smoking crack cocaine prior to the stop. Petitioner pled

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Deputy Link filed the petition after learning that the DHHR declined to do so due to its inability to substantiate the allegations of abuse.

1

guilty to the charge in October of 2018 and was sentenced to serve sixty days of incarceration on weekends. Deputy Link further alleged that in December of 2018, petitioner presented to the jail to serve time but was denied entrance due to being under the influence.[3] The petition also contained allegations that the child cried at school out of fear of witnessing petitioner's drug abuse, that school personnel expressed concern that the child did not have enough food, and that petitioner was previously convicted of drug-related charges in 2014.

Following the January 3, 2019, preliminary hearing, the DHHR filed an amended petition.[4] The DHHR alleged that upon being denied admission to the jail to serve her weekend sentence in December of 2018, petitioner was transported to Berkeley Medical Center where she tested positive for amphetamines, benzodiazepine, opiates, cannabinoids, cocaine metabolites, and oxycodone. The DHHR further alleged that petitioner tested positive for marijuana at the preliminary hearing. Approximately three weeks later, petitioner and the father were involved in an altercation wherein the father attempted to strangle petitioner. Shortly thereafter, petitioner moved to Pennsylvania.[5]

The adjudicatory hearing was held over the course of several days in March, April, May, and June of 2019, with a second amended petition being filed in April of 2019. Despite denying her drug abuse throughout the hearings, petitioner filed an answer to the second amended petition in May of 2019 wherein she admitted to "allegations of general neglect resulting from her use of drugs which has adversely affected her ability to parent and has negatively impacted her child." Thereafter, petitioner requested a post-adjudicatory improvement period. The final adjudicatory hearing was held in June of 2019. Petitioner stipulated to the allegations regarding her drug use and how it adversely affected her parenting. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent.

The circuit court held a dispositional hearing in July of 2019. In support of her motion for a post-adjudicatory improvement period, petitioner testified that she was accepted into an intensive outpatient program ("IOP") in Pennsylvania to address her drug addiction. Petitioner also claimed that she had been in contact with an inpatient program. Petitioner agreed that she would participate in all of the terms and conditions of an improvement period, but expressed concern about traveling to West Virginia frequently given that she continued to reside in Pennsylvania and did not own a car. On cross-examination, petitioner conceded that she had done nothing during the proceedings. Specifically, petitioner agreed that she had not consistently submitted to drug screens, maintained contact with the DHHR, or called the DHHR to set up services. Petitioner also continued to deny that her husband attempted to strangle her shortly after the proceedings began. When asked hypothetically if she would enter a one-year inpatient treatment program that day if given the

---

[3]Petitioner was subsequently incarcerated for violating her weekend incarceration sentence.

[4]The DHHR moved the circuit court to add it as a co-petitioner to the proceedings, and the circuit court granted the request.

[5]Throughout the proceedings, petitioner denied that the domestic violence incident occurred.

opportunity, petitioner stated that she would not commit to one year. A DHHR worker testified that, at a May of 2019 multi-disciplinary team ("MDT") meeting, referrals were made for supervised visitation, adult life skills classes, individualized parenting classes, drug screening, and a psychological evaluation. However, petitioner never called to initiate any of these services. The DHHR attempted to present the testimony of a service provider who would testify regarding petitioner's lack of participation with drug screens throughout the proceedings, but instead petitioner stipulated that she had voluntarily submitted to only one drug screen.

After taking judicial notice of all prior evidence and testimony presented in the matter, the circuit court denied petitioner's motion for a post-adjudicatory improvement period, finding that she failed to provide any evidence demonstrating that she would be likely to successfully complete the same. The circuit court further found that petitioner failed to participate in any services offered by the DHHR, repeatedly lied to the court about which controlled substances she would test positive for when screened, and continuously denied being involved in a physical altercation with the father. Petitioner repeatedly refused to attend long-term inpatient drug rehabilitation throughout the proceedings and conceded she had done nothing to address her drug addiction since the inception of the case.[6] While petitioner claimed she entered an IOP, she provided no supporting documentation. Ultimately, the circuit court terminated petitioner's parental rights upon findings that there was no reasonable likelihood that she could correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the August 9, 2019, dispositional order.[7]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

---

[6]Included in the dispositional order was a chart depicting petitioner's drug screens throughout the proceedings, most of which were provided as part of her probation and not the underlying proceedings. On January 3, 2019, petitioner tested positive for THC. On January 22, 2019, petitioner tested positive for cocaine, benzodiazepines, fentanyl, opiates, and THC. Petitioner failed to submit to her drug screen scheduled for February 5, 2019. On February 22, 2019, petitioner tested positive for THC, opiates, cocaine, and benzodiazepines. On March 29, 2019, petitioner tested positive for heroin, cocaine, fentanyl, norfentanyl, codeine, morphine, and THC. On April 1, 2019, petitioner tested positive for cocaine, opiates, THC, and fentanyl. Petitioner tested negative for substances on April 26, 2019. On May 31, 2019, petitioner tested positive for THC and alcohol. On June 21, 2019, petitioner tested positive for opiates, Oxycodone, and THC. Petitioner refused to submit to a drug screen following the dispositional hearing.

[7]The father's parental rights were also terminated below. The permanency plan for the child is adoption in her current foster placement.

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period. According to petitioner, she "readily admitted" that she had a long history of drug abuse and that "she required inpatient treatment" to become sober. Specifically, petitioner testified at the dispositional hearing that she would comply with the terms and conditions of an improvement period and enter an inpatient treatment program. Petitioner contends that her testimony established that she was likely to participate in an improvement period and otherwise satisfied the requirements to be granted an improvement period. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Having reviewed the record, we find that the circuit court did not abuse its discretion in denying petitioner's request for an improvement period. Apart from attending hearings, petitioner failed to participate in nearly every aspect of the proceedings. Petitioner continuously tested positive for drugs throughout the entirety of the proceedings and failed to take advantage of the numerous services offered to her. Indeed, at the dispositional hearing, petitioner testified that she did not contact the DHHR to set up services after the May of 2019 MDT meeting and refused to attend an inpatient treatment program when asked hypothetically whether she would go if a bed were available that same day. Further, petitioner consistently denied engaging in domestic violence with the father after the initiation of the proceedings and failed to visit with the child despite a referral having been set up for supervised visitation. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. at 90 n.14, 479 S.E.2d at 600 n.14 (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Accordingly, while petitioner claims her self-serving statements made at the last hour prove that she was likely to participate in an improvement period, her complete lack of compliance throughout the proceedings demonstrates otherwise. We find petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. According to petitioner, she admitted to the allegations of abuse and requested the opportunity to correct those conditions. Nevertheless, petitioner avers that the child "was never physically harmed or abused" and that the DHHR did not initially substantiate abuse or file a petition. Further, petitioner contends that the DHHR was not required to file a petition to terminate her parental rights. We find petitioner's arguments to be without merit.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(3), no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected includes a situation in which

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Petitioner failed to follow through with rehabilitative efforts to reduce or prevent the abuse or neglect of the child. While petitioner claims she never physically abused the child, she nonetheless stipulated to abusing and/or neglecting the child due to her substance abuse. Moreover, petitioner failed to make any attempts to address her substance abuse throughout the proceedings below. Petitioner refused inpatient drug treatment and tested positive for a myriad of illegal or nonprescribed substances at nearly every screen. When asked whether she would hypothetically enter an inpatient treatment program for a year if a bed were available the same day as the dispositional hearing, petitioner testified that she would not commit to one year of treatment. Further, as noted above, the DHHR made referrals for several services, including supervised visitation, adult life skills classes, individualized parenting classes, drug screens, and a psychological evaluation following the May of 2019 MDT meeting. Petitioner moved out of State and never called the DHHR to ask about or initiate these services. Based on this evidence, it is clear there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future.

To the extent that petitioner claims she should have been granted an improvement period prior to the termination of her parental rights, this Court has previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

5

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Petitioner's complete lack of participation in any services offered to her supports the circuit court's findings that there was no reasonable likelihood she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Therefore, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 9, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: March 13, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison